**LAMBRECHT & ASSOCIATES, INC., Appellant,**

v.

**STATE FARM LLOYDS, Appellee.**

**No. 12-01-00146-CV.**

Court of Appeals of Texas, Tyler.

May 13, 2003.

Rehearing Overruled Sept. 4, 2003.

---

Deborah J. Race, Ireland Carroll & Kelley, P.C., Tyler, for appellant.

Paul M. Boyd, Tyler, for appellee.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Appellant Lambrecht & Associates, Inc. ("Lambrecht") sought coverage from State Farm Lloyds ("State Farm") under a business insurance policy for the loss of computer data and the related loss of business income. Both Lambrecht and State Farm filed traditional motions for summary judgment on the question of coverage. In one issue on appeal, Lambrecht contends that the trial court erroneously granted State Farm's motion for summary judgment and denied Lambrecht's motion. We reverse the trial court's order granting summary judgment for State Farm and remand the case for further proceedings.

### BACKGROUND

Lambrecht is an employment agency located in Tyler, Texas. Lambrecht's income is generated by matching prospective employers and employees for a fee. All of the staff at Lambrecht use computers to

communicate with prospective employers and employees, either by printing and mailing information stored on the computers or by transmitting via electronic media or e-mail. In addition, the computers are used to input various types of information used in Lambrecht's business. The computers used by Lambrecht's employees were networked into a large central computer that functioned as a server and was equipped with certain pre-packaged software programs, including MS Office, Microsoft Access, and Norton Anti–Virus. The server was also used by Lambrecht's office manager, Judi Ashley ("Ashley"), in the performance of her job responsibilities.

On or about February 9, 2000, Ashley noticed problems in the function of her computer. The computer began to have difficulty "booting up" and could not readily locate and retrieve stored information. The computer also began performing a number of "illegal functions" without command and ultimately "froze up." After the computer "froze," none of the information that had previously been stored could be retrieved, and no additional information could be loaded.

To restore its computer system, Lambrecht had to replace its server, purchase a new operating system and other pre-packaged software, and manually re-enter much of its data. As a result, Lambrecht's employees were unable to use their computers to communicate with prospective employers and employees until the server was restored. The February 2000 monthly income statement showed a decrease in fee income, and Ashley attributed the decrease to Lambrecht's inability to use its computers during the time the server was not functioning.

At the time of the computer failure, Lambrecht had a business insurance policy (the "policy") with State Farm. Section 1, Coverage B of the policy stated that "we

will pay for accidental direct physical loss to business personal property at the premises described . . . ." Section 1, Coverage C of the policy stated that "[i]f loss of income coverage is shown in the Declarations, we will pay: 1. for the actual loss of 'business income' you sustained due to the necessary suspension of your 'operations' during this 'period of restoration.' The suspension must be caused by accidental direct physical loss to property at the described premises . . . ."

Lambrecht filed a claim with State Farm for lost business income and for the expenses of replacing the server and software packages and hiring someone to input the company data on the new system. State Farm denied coverage, and Lambrecht filed suit, alleging that the loss occurred "when an unauthorized individual, commonly known as a 'hacker' unlawfully gained entry into [Lambrecht's] computer systems and injected into [Lambrecht's] computers a program that is commonly known as a 'computer virus.'" Both Lambrecht and State Farm filed motions for summary judgment on the coverage issue. On May 7, 2001, the trial court signed a judgment granting State Farm's motion, and this appeal followed.

### STANDARD OF REVIEW

Summary judgment is appropriate if the motion and evidence establish that the moving party is entitled to judgment as a matter of law on the issues set out in the motion. TEX.R. CIV. P. 166a(c). A plaintiff moving for summary judgment must conclusively prove all essential elements of the claim. *See MMP Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). A defendant moving for summary judgment must either disprove at least one element of the plaintiff's theory of recovery or plead and prove all essential elements of an affirmative defense. *City of Houston v. Clear Creek*

*Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979). If the movant's motion and summary judgment proof facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Dolcefino v. Randolph,* 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Because the propriety of summary judgment is a question of law, we review the trial court's summary judgment de novo. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

In the case at hand, Lambrecht and State Farm both filed traditional motions for summary judgment[1] on the issue of coverage. In reviewing a traditional motion for summary judgment, we apply the following well-established standards: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

When parties file cross motions for summary judgment, each party in support of its own motion necessarily takes the position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter of law. *Ackermann v. Vordenbaum,* 403 S.W.2d 362, 364 (Tex. 1966). If one motion is granted and the other denied, we must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus*

*County v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). In so doing, we first review the order granting summary judgment, and if we determine the order was erroneous, we review the trial court's action in overruling the denied motion. *See Tobin v. Garcia,* 159 Tex. 58, 64, 316 S.W.2d 396, 400 (1958). We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Gramercy Ins. Co. v. MRD Investments, Inc.,* 47 S.W.3d 721, 724 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988)). We may also render judgment for the other movant, provided that both parties sought final judgment relief in their cross motions for summary judgment. *See Jones,* 745 S.W.2d at 900; *CU Lloyd's of Texas v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998).

### WAS STATE FARM ENTITLED TO JUDGMENT AS A MATTER OF LAW?

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex. 1997). Accordingly, when a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.,* 842 S.W.2d 631, 633 (Tex.1992). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* However, if the contract is subject to more than one reasonable interpretation, then the contract is ambiguous and it will be interpreted in favor of coverage for the insured. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). We must strive to effectuate the policy as the written expression of the parties' intent. *State*

---

1.  TEX.R. CIV. P. 166a(c).

*Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). To this end, we construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy. *See id.; Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994); *Tumlinson v. St. Paul Ins. Co.,* 786 S.W.2d 406, 408 (Tex.App.-Houston [1st Dist.] 1990, writ denied). A trial court errs when it does not construe an unambiguous provision as a matter of law and instead submits the issue to a fact finder. *GTE Mobilnet of South Texas Ltd. Pshp. v. Telecell Cellular, Inc.,* 955 S.W.2d 286, 290 (Tex.App.-Houston [1st Dist.] 1997, writ denied).

Section 1, Coverage B of the policy states that "[State Farm] will pay for accidental direct physical loss to business personal property at the premises described...." In its motion for summary judgment, State Farm maintained that the facts alleged by Lambrecht do not constitute a covered loss under the policy. Specifically, State Farm asserted that Lambrecht's loss was neither physical nor accidental. State Farm further contended that, in addition to its failure to show a covered loss, Lambrecht failed to make certain police were notified of the loss as required by the policy.[2] According to State Farm, such notification is a condition precedent to coverage, which Lambrecht failed to satisfy.

The order granting State Farm's motion for summary judgment does not state the grounds on which the trial court relied. Consequently, the summary judgment must be affirmed if any one of the movant's theories has merit. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995). Therefore, we examine each ground alleged in State Farm's motion.

*Accidental Loss*

■ State Farm contends that Lambrecht's damage could not have been accidental because the act that caused the damage (the hacker's invasion) was voluntary and intentional. Lambrecht disagrees, contending that injuries caused by the intentional conduct of a third party can in some instances be considered accidental for purposes of determining insurance coverage. Courts determine whether certain conduct constitutes an "accident" for purposes of insurance coverage on a case-by-case basis. *Wessinger v. Fire Ins. Exch.,* 949 S.W.2d 834, 837 (Tex.App.-Dallas 1997, no writ).

In support of its argument, Lambrecht cites *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549 (Tex.1976). In *Heyward,* the insured was intentionally shot by another person. The insured's wife filed a claim as named beneficiary of the insured's group life insurance policy and sought recovery under an accidental death rider. The insurance company argued, as State Farm does here, that a result is not "accidental" if it results from injuries intentionally inflicted by another. The court rejected the insurance company's argument, and relied on the rule stated in *Hutcherson v. Sovereign Camp. W.O.W.,* 112 Tex. 551, 251 S.W. 491 (1923): "The test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured." *Id.* at 493–94. In holding that the facts of that case supported coverage, the *Heyward* court noted that

> [w]here an insured's injuries are caused by the intentional acts of another, the injuries are nevertheless accidental within the terms of an insurance policy covering death by "accidental means" if

---

**2.** Section I, Paragraph 3, Condition provides that in the event of loss, the insured must "notify the police if a law may have been broken...."

from the insured's viewpoint his conduct was not such as to cause him to reasonably believe that it would result in his injury.

*Heyward*, 536 S.W.2d at 557. The rule enunciated in *Heyward* was recently reaffirmed in *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex.2002). In *King*, Carlyle King ("King"), the owner of a construction company, was sued after one of his employees assaulted an employee of another company working at the same construction site. *Id.* at 187. King was insured by Dallas Fire Insurance Company ("Dallas Fire") through a commercial general liability policy. The plaintiff alleged that King was liable for his employee's actions not only through *respondeat superior*, but also because of King's own negligence in failing to run a criminal background check, in failing to determine whether the employee had a propensity for violence, and in failing to provide any training on how to "peaceably and responsibly handle work-generated construction site situations." *Id.* King forwarded the plaintiff's petitions to Dallas Fire, but Dallas Fire refused to defend King because the plaintiff had not alleged an "occurrence" within the meaning of King's insurance policy. King then brought a declaratory judgment action against Dallas Fire, asking the trial court to determine that Dallas Fire was legally obligated to defend the underlying litigation. *Id.* After both parties filed motions for summary judgment, the trial court concluded that Dallas Fire did not owe King a duty to defend him. The court of appeals affirmed the trial court's decision. *Id.*

The policy defined "occurrence" as " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Id.* Dallas Fire contended that there was no occurrence in this case because the actions of King's employee were intentional. King asserted that while he did not intend to injure the

plaintiff, he perhaps negligently hired, trained or supervised his employee and that from his standpoint, the plaintiff's injuries were the result of an accident, which is an occurrence invoking the duty to defend. *Id.* at 187–88.

In determining whether there had been an "occurrence" under the policy, the supreme court first determined from whose perspective the injury-triggering event must be viewed: the insured's, the victim's or the actor's. *Id.* The court looked to the *Heyward* test to support its determination that a court should view the event from the insured's standpoint. *Id.* at 189–90. Accordingly, the court held that the petition against King alleged an "occurrence" because the employee's intent to commit an assault was not imputed to King. *Id.* at 193.

State Farm cites *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819 (Tex.1997) to support its contention that the type of damage Lambrecht suffered was not caused accidentally because the damage was inflicted voluntarily and intentionally. In *Cowan*, the insured made copies of the plaintiff's revealing photographs and showed them to his friends. *Id.* at 820–21. When the plaintiff found out and filed suit, the insured argued that his actions constituted an accident because he did not intend for the plaintiff to find out about the copies. *Id.* at 826. To determine whether the event alleged was an "accident," the court relied on *Heyward* and *Hutcherson* in concluding that whether the event was an accident should be viewed from the insured's standpoint. *Id.* at 826–27. The court ultimately held that the insured's conduct was not accidental because he "did exactly what he intended to do when he purposefully copied the photographs and showed them to his friends"; therefore, the results of his intentional conduct were

"reasonably anticipated." *Id.* at 827. Accordingly, the court concluded, there was no coverage for the alleged injury because the actor *was* the insured. *Id.* (emphasis added).

■ In the instant case, the only evidence of the cause of the loss was contained in Ashley's affidavit, where she stated that a virus caused the computers to have difficulties while "booting up," perform a number of "illegal functions" and eventually completely "freeze up," thereby rendering the computers useless.[3] Therefore, the issue presented in the instant case is markedly different from the issue presented in *Cowan*. State Farm has not alleged that Lambrecht participated in any conduct that, when viewed from Lambrecht's perspective, would cause Lambrecht to reasonably believe that such conduct would result in its injury. The record is devoid of any evidence, nor has State Farm ever alleged, that Lambrecht was involved in any voluntary or intentional conduct or took any action which caused the damage Lambrecht suffered. *See Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 778 (Tex.App.-Corpus Christi 2002, no pet.) (Insurer alleged negligence against insured but not intentional con-

duct; therefore, acts allegedly committed by the insured were accidental because they were committed involuntarily and unintentionally). Without such evidence, State Farm cannot impute the intent of the person who injected the virus into Lambrecht's computer system to Lambrecht itself in order to avoid coverage.[4] *See King*, 85 S.W.3d at 191–92. Therefore, when viewing the injection of the virus into Lambrecht's computer system from Lambrecht's viewpoint, there is no evidence in the record to suggest that Lambrecht could have "reasonably anticipated" the resulting incapacitation of its computer system. Accordingly, we hold that the injection of the virus and the resulting damage was an unexpected and unusual occurrence and was, from Lambrecht's viewpoint, accidental. *See Heyward*, 536 S.W.2d at 558.

### Physical Loss

■ The policy insures against "accidental direct physical loss." State Farm argues that the loss of information on Lambrecht's computer systems was not a "physical" loss because the data on Lambrecht's computers did not exist in physical or tangible form. Lambrecht argues

---

**3.** In its brief, State Farm contends that Ashley's affidavit was not reliable evidence of the cause of Lambrecht's loss because it was not based on any proper foundation. This objection was raised in State Farm's motion for summary judgment; however, State Farm never obtained a ruling on the affidavit from the trial court. As a prerequisite to presenting a complaint for appellate review, the record must show that (1) the complaint was made to the trial court by a timely request, objection, or motion and (2) the trial court either expressly or implicitly ruled on the motion or refused to rule on the matter. *See* Tex.R.App. P. 33.1. A ruling on a motion for summary judgment does not imply that the trial court implicitly ruled on evidentiary objections. *Rogers v. Continental Airlines, Inc.*, 41 S.W.3d 196, 200 (Tex.App.-Houston [14th

Dist.] 2001, no pet.). Therefore, State Farm has waived any objection to Ashley's affidavit by not obtaining a ruling on its objections. *Id.; see, e.g., Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316–17 (Tex.App.-San Antonio 2000, no pet.).

**4.** When an insurer has been sued for payment under an insurance policy, article 21.58(b) of the Texas Insurance Code, places the burden of proof on the insurer as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Tex. Ins.Code Ann. art. 21.58(b) (Vernon Supp.2003). "Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense." *Id.*

that coverage is available under the policy for the resulting loss of (1) the server, (2) pre-packaged software for the server, (3) all information stored on the computer, and (4) business income during the time the computers and server were unusable based on the express language of the policy itself.

### Applicable Policy Provisions

Under "Coverage B—Business Personal Property," the policy insures against "accidental physical loss" to business personal property, including "(1) property you own that is used in your business, [and] (2) property of others that is in your care, custody or control...." The applicable business personal property that is excluded from coverage is

[t]he cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Extensions of Coverage and Coverage C—Loss of Income.

Under the heading "Property Subject to Limitations," the policy states that

[w]e will not pay for loss:

1. to valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other electronic data processing, recording or storage media, and other records, caused by any error in programming. But if loss to papers or records, including those which exist on electronic or magnetic media is caused by any other insured loss, we will pay either:

    a. the cost of replacing the papers or records with duplicates of like kind and quality, such as prepackaged software programs, if duplicate material is

available on the current retail market; or

    b. the cost of unexposed or blank material for reproducing the papers or records, if they cannot be replaced with duplicate material of like kind and quality.

Under "Coverage C—Loss of Income," the policy states that State Farm "will not pay for any loss of 'business income' caused by accidental direct physical loss to 'electronic media and records' after the longer of" sixty consecutive days from the date of the loss or the amount of time necessary to repair, rebuild or replace other property at the premises caused by the same occurrence.

In addition to the coverage enumerated in the general provisions of the policy, Lambrecht purchased $100,000.00 of the following "Extension of Coverage:"

**Valuable Papers and Records.** We will pay your expense to research, replace or restore the lost information on valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

### Analysis

In its brief, State Farm argues that the losses alleged by Lambrecht are not "physical" because they are not "tangible," i.e., capable of being touched or sensed. Other courts have addressed the issue as to whether computer data, broken down to its component "bits and bytes," is "physical" or "tangible." *See American Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, 2000 WL 726789 (D.Ariz.2000); *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F.Supp.2d 459, 466–67 (E.D.Va.2002). Most of these opinions focus on the physical nature of the data itself and debate whether or not it can be dissolved into a quantitative mass or is entirely transcen-

dental. We need not attempt to compose such an erudite thesis because the issue of whether or not the losses alleged by Lambrecht are covered by the policy can be determined by analyzing the policy itself.

According to Ashley's affidavit, the server, the pre-packaged software, and the data stored on the server were all destroyed as a result of the virus and each of these items had to be replaced. Ashley also stated that the server was the "central computer," that all other computers in the office used the software that was installed on the server, and that as a result of the virus, the server was "unable to accept, receive or retrieve any information in any form whatsoever and was totally useless as a computer." In the section of the policy defining coverage for loss of income, "electronic media and records" is defined as

a. electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. data stored on such media; or

c. programming records used for electronic data processing or electronically controlled equipment.

We hold that the plain language of the policy dictates that the personal property losses alleged by Lambrecht were "physical" as a matter of law. Based on Ashley's affidavit, the server falls within the definition of "electronic media and records" because it contains a hard drive or "disc" which could no longer be used for "elec-

tronic data processing, recording, or storage."[5] The data that Lambrecht lost as a result of data is also covered because it was the "data stored on such media."

According to the policy, there can be a "loss to papers or records, including those which exist on electronic or magnetic media" that is not "caused by an error in programming." If such a loss occurs, State Farm will pay "the cost of replacing the papers or records with duplicates of like kind and quality, such as *prepackaged software programs*, if duplicate material is available on the current retail market...." (emphasis added). Based on the evidence in the record, the losses were caused by a virus, not an "error in programming." Therefore, the pre-packaged software Lambrecht lost as a result of the virus is also covered under the policy.

Lambrecht also purchased additional coverage for the "expense to research, replace or restore the lost information on valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist." In Ashley's affidavit, she alleged that "the company incurred additional expenses in employee time to acquire and install a new server and properly reload all of the software in it." According to the plain language of the policy, these expenses Lambrecht incurred in replacing the lost data are covered.

---

5. Ashley's affidavit is the only evidence submitted by either party as proof of the losses it suffered and their cause, namely the virus. Our review of the record indicates that the parties may have tentatively agreed to cease any additional discovery until this court rendered a decision in this matter. State Farm alludes to this agreement in its response to Lambrecht's motion for summary judgment to support its contention that additional discovery needs to be completed. Even if Ashley's affidavit could have been "readily con-

troverted," a sworn motion for continuance must be included in the record in order to preserve any complaint on appeal that additional discovery was needed. Tex.R. Civ. P. 166a(g); *Jaimes v. Fiesta Mart, Inc.,* 21 S.W.3d 301, 304 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). State Farm did not file such a motion; therefore, any contention that it did not have enough time to complete discovery in this matter was waived. Tex.R.App. P. 33.1.

By its direct language, the policy covers loss of business income caused by "accidental direct physical loss to 'electronic media and records'" but only that income lost for either sixty consecutive days from the date of the loss or the amount of time necessary to repair, rebuild or replace other property at the premises caused by the same occurrence. Accordingly, the business income Lambrecht lost as a result of the virus is covered under the policy because Lambrecht suffered a loss of its "electronic media and records" during the months of February and March.

State Farm's contention that Lambrecht did not suffer an "accidental direct physical loss" runs contrary to the language of the policy, which expressly states that it will pay for loss of business income caused by "accidental direct physical loss" to "electronic media and records." According to State Farm's argument, the policy would never cover such a loss because the "electronic media and records" and the "data stored on such media" is not "physical." The plain language of the policy's provisions and definitions dictates that such property is capable of sustaining a "physical" loss.

### Condition Precedent

■ State Farm also contends that even if Lambrecht was entitled to coverage for its alleged losses, State Farm is absolved of any liability under the policy because Lambrecht failed to comply with a condition precedent under the policy. Under the section entitled, "Duties in the Event of a Loss," the policy states that the insured must "notify the police if a law may have been broken." State Farm contends that the injection of the virus into Lambrecht's computer violated section 33.02 of the Texas Penal Code,[6] entitled "Breach of

Computer Security," and that since Lambrecht did not contact the police after the virus was discovered, Lambrecht failed to comply with all necessary conditions precedent under the policy. We disagree.

■ "Conditions precedent to an obligation to perform [under a contract] are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). The interpretation of an unambiguous contract, including whether a contractual provision creates a condition precedent to performance, is a question of law for the court. *Tubb v. Bartlett,* 862 S.W.2d 740, 746–47 (Tex. App.-El Paso 1993, writ denied). We hold that this provision in the policy does not create a condition precedent because it does not condition payment of a covered loss on contacting the police if a law was broken.

Based upon our analysis of State Farm's motion for summary judgment, we conclude that State Farm failed to prove it was entitled to judgment as a matter of law. Accordingly, the trial court erred in granting summary judgment in favor of State Farm. Our inquiry does not end there, however, because Lambrecht also filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law.

### Was Lambrecht Entitled to Judgment as a Matter of Law?

■ Based on the assertions contained in Ashley's affidavit, Lambrecht contends that the losses it suffered were covered by

6. Section 33.02 of the Texas Penal Code makes it an offense to knowingly access a computer, computer network, or computer

system without the effective consent of the owner. Tex. Pen.Code Ann. § 33.02 (Vernon 1997).

the policy and that it was entitled to judgment as a matter of law. State Farm argues that the losses Lambrecht suffered were excluded from coverage because the losses were not "accidental direct physical losses."

■ In order to recover under an insurance policy, an insured must prove that the loss was covered by the policy. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 945 (Tex.1988). Therefore, Lambrecht had the burden to prove that the losses it suffered were "accidental direct physical losses." In order to prove that the losses were caused accidentally and that it was entitled to judgment as a matter of law, Lambrecht had to prove that the losses were not the intended result of an act performed by one of its own employees. Although Lambrecht did prove that the losses it suffered were "physical," its summary judgment evidence did not prove that the loss was accidental. Ashley's affidavit states that the problems the computers were having "is what occurs when a computer virus gets into a computer"; however, she does not mention how that virus entered Lambrecht's computer system. Her affidavit does not indicate whether the virus was injected into Lambrecht's computers by a hacker unaffiliated with Lambrecht's operations or by one of Lambrecht's employees. The only mention that the injection of the virus into Lambrecht's computer system was caused by a hacker is in the body of Lambrecht's motion for summary judgment. Such an assertion, contained in the body of the motion and not in an affidavit, is not competent summary judgment evidence. *See* TEX.R. CIV. P. 166a(c); *Bakali v. Bakali*, 830 S.W.2d 251, 257 (Tex.App.-Dallas 1992, no writ). Accordingly, Lambrecht is not entitled to judgment as a matter of law.

## CONCLUSION

The trial court erroneously sustained State Farm's motion for summary judgment because the determination of whether the injection of the virus into Lambrecht's computers was accidental must be made from Lambrecht's viewpoint. After resolving all reasonable inferences in Lambrecht's favor and viewing the injection of a virus into Lambrecht's computer network system from Lambrecht's perspective, we conclude that such an act was accidental. Furthermore, because the policy defines the type of personal property that Lambrecht is alleged to have lost as a result of the virus and dictates that this property is subject to an "accidental direct physical loss," the personal property losses are "physical" under the policy. After analyzing whether the policy language regarding contacting the police creates a condition precedent, we hold that such language does not create a condition precedent to State Farm's duty to pay for a covered loss.

Likewise, when we analyze Lambrecht's motion for summary judgment and resolve all reasonable inferences in State Farm's favor, we cannot render judgment in Lambrecht's favor because there is no evidence to demonstrate that the losses it suffered were accidental. Therefore, the resolution of the issues in this case rests on disputed facts; accordingly, the trial court erred in granting summary judgment in State Farm's favor. *See Gramercy Ins. Co.*, 47 S.W.3d at 724.

We *reverse* the trial court's order granting summary judgment and *remand* this cause for further proceedings.