**Opinion issued September 18, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-12-00085-CV**
**NO. 01-12-00346-CV**

_____

**BP AUTOMOTIVE, L.P. D/B/A BOSSIER DODGE, Appellant**

**V.**

**RML WAXAHACHIE DODGE, L.L.C.; RML WAXAHACHIE FORD,
L.L.C.; RLJ-MCLARTY-LANDERS AUTOMOTIVE HOLDINGS, L.L.C.;
AND RML WAXAHACHIE GMC, L.L.C., Appellees**

**\*\*\*\***

**BP AUTOMOTIVE, L.P. D/B/A BOSSIER DODGE, Appellant**

**V.**

**RLJ-MCLARTY-LANDERS AUTOMOTIVE GROUP, Appellee**

**On Appeal from the 87th District Court**

**O P I N I O N**

This appeal arises out of an asset purchase agreement contemplating the sale of a car dealership's assets. After the sale failed to close, the dealership sued the prospective buyer, alleging breach of contract and several other causes of action. The trial court granted the prospective buyer's no-evidence and traditional motions for summary judgment, and denied the dealership's traditional motion for summary judgment. These appeals followed. We affirm in part and reverse and remand in part.

**BACKGROUND**

**The Parties**

Appellant, BP Automotive, L.P. ["Bossier Dodge"] is a Chrysler/Dodge dealership located in Waxahachie, Texas, and its limited partners are W. Randy Pretzer and L. Scott Bossier. BPRE, Ltd. ["BPRE"] is a related entity that owns the real property upon which Bossier Dodge sits.

Appellees, RML Waxahachie Dodge, L.L.C., RLJ-McLarty-Landers Automotive Holdings, L.L.C., RML Waxahachie Ford, L.L.C., and RML

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Tenth District of Texas. Misc. Docket No. 12-9008 (Tex. Jan. 20, 2012); see TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases).

Waxahachie GMC, L.L.C. [collectively, "RML"], are purportedly part of RLJ-McLarty-Landers Automotive Group ["RLJ Group"], which owns 23 dealerships and 36 franchises in seven states, including Texas[2]. Robert Johnson, Thomas "Mack" McLarty, and Steve Landers, Jr. are board members of all of the entities mentioned in this paragraph.

**Bossier Dodge and RML Waxahachie Dodge Enter an Asset Purchase Agreement**

In 2008, Bossier Dodge experienced financial difficulties and began looking for a potential buyer for its assets. On March 20, 2009, after months of negotiations, RML Waxahachie Dodge executed an Asset Purchase Agreement ["the APA"]. The parties agreed that Bossier Dodge would sell its fixtures, inventory, and other dealership assets for $180,100. The APA provided that the "Closing Date shall be on or before April 15, 2009, or as soon thereafter as practical." The APA also provided that "time is of the essence with respect to this Agreement." The same date that the APA was signed by the parties, RML also entered a lease with the landowner, BPRE.

In Article 5, titled "Covenants and Additional Agreements," the parties agreed to "use their respective best efforts at their own expense: (i) to obtain prior to the earlier of the date required (if so required) or the Closing Date, all waivers,

---

[2] RLJ-McLarty-Landers Automotive Group filed a verified denial in the trial court contending that it is not a legal entity. That issue is not before us in this appeal.

permits, licenses, approvals, authorizations, qualifications, orders and consents of all third parties and governmental authorities" required for "the consummation of the transactions contemplated by this Agreement[.]" One of the conditions covered by this section was that RML Waxahachie Dodge was required to seek the approval of Chrysler Motors, L.L.C. ["Chrysler"], and between March 25 and March 30, 2009, RML sent the executed APA to Chrysler. According to RML, Chrysler, as a condition of its assent, required the approval of a lender, Chrysler Financial. On April 17, 2009, RML informed Bossier Dodge that Chrysler Financial had not provided the necessary financing and that Paul Hart, RML's representative, did not know why.

**Chrysler Files for Bankruptcy and Bossier Dodge Closes Its Doors**

On April 30, 2009, Chrysler declared bankruptcy. As a result of the bankruptcy, Bossier Dodge's franchise agreement with Chrysler had to be assumed or rejected in Chrysler's bankruptcy proceedings. The day after Chrysler declared bankruptcy, Bossier Dodge closed its doors and ceased doing business. Two weeks later, on May 15, 2009, Chrysler rejected Bossier Dodge's franchise agreement and the franchises of 788 other dealerships around the country.

**RML Obtains Franchises from Reorganized Chrysler**

On July 8, 2009, the reorganized Chrysler awarded RML a franchise for a Chrysler, Dodge, and Jeep dealership in Waxahachie. However, Chrysler was not

yet qualified to do business in Texas and, as a result, any franchise awarded could not be licensed in Texas. RML's position is that it could not close the APA because it could not obtain the licenses and approvals necessary to operate a franchise in Waxahachie, Texas.

**RML Uses Space at the Dealership for a Short While**

In July, 2009, Bossier Dodge gave RML permission to use the service department. This allowed some of Bossier Dodge's employees to continue to work (for RML) after Bossier Dodge closed. The parties dispute whether there was an agreement as to payment for this use. Thereafter, RML placed two technicians in the Waxahachie service department, and those technicians performed work for a four-to-five week period. During this period, RML paid for the utilities, maintenance, and other services on the property. RML and Bossier Dodge dispute whether there was an agreement to pay rent during this period.

Regarding the issue of rent, it is noteworthy that RML and BPRE entered a second lease on July 20, 2009, which was to "commence three business days after the Lessor (sic) receives the necessary consents and authorizations from both Chrysler Group LLC and the Texas Motor Vehicle Commission to conduct business on the demised premises as a Chrysler franchised automotive dealer," which did not occur until March 2010.

**Bankruptcy Proceedings Initiated**

On November 25, 2009, Bossier Dodge and BPRE filed an Adversary Complaint against RML. *See In Re: BPRE, L.P., Debtor, BPRE, L.P. and BP Automotive, L.P. v. RML Waxahachie Dodge, L.L.C., et. al., Defendants*, U.S. Bankruptcy Court, Western District of Texas, Waco Division, Case No. 09-61289, Adv. Case No. 09-06032, filed Nov. 25, 2009. On February 2, 2010, the chief bankruptcy judge signed an order dismissing Bossier Dodge as a misjoined party and dismissing all of its claims without prejudice. BPRE then filed an Amended Adversary Complaint in which it complained of the following (1) breach of the APA, (2) tortious interference with Franchise Agreements, (3) tortious interference with prospective business relations, (4) civil conspiracy, (5) unfair competition by misappropriation, (6) breach of the lease[s], (7) quantum meruit, (8) trespass to real property, and (9) unjust enrichment. BPRE also sought attorney's fees and exemplary damages.

**The Underlying Lawsuit by Bossier Dodge**

After being dismissed from the Bankruptcy Proceeding, Bossier Dodge filed the present suit in state court asserting claims of (1) breach of the APA, (2) tortious interference with franchise agreements, (3) tortious interference with prospective business relations, (4) unfair competition by misappropriation, (5) quantum meruit, (6) unjust enrichment, (7) fraud, and (8) civil conspiracy. Many of these are

`6

essentially the same as those pleaded in the bankruptcy proceedings, the essential difference, of course, being the omission of BPRE's lease claims.

**Proceedings Continue in the Bankruptcy Court**

RML moved for partial summary judgment in the bankruptcy court on BPRE's claim for breach of the APA, which the Bankruptcy Judge, Hon. Ronald B. King, granted because BPRE was not a party to the APA. Judge King also made 29 findings of fact ["the King findings"], many of which concerned the circumstances surrounding the execution of the APA.

The Bankruptcy Proceeding was tried on July 19, 2010, after which the trial judge, the Hon. John C. Akard, entered a Memorandum of Opinion, which also contained findings of fact concerning the circumstances surrounding the formation and performance of the APA ["the Akard findings"]. The trial judge entered a purportedly final "Judgment," denying all of BPRE's claims in the adversary proceeding.

**The Underlying Suit Proceeds to Judgment**

RML then moved for a traditional summary judgment in the trial court below, arguing that the bankruptcy proceedings—particularly the King findings and the Akard findings—should be given collateral estoppel effect in the state court proceeding. Bossier Dodge responded, arguing among other things, that the bankruptcy court's judgment was not final, thus no collateral estoppel would lie.

RML also moved for a no-evidence summary judgment claiming that no evidence supported any of the claims asserted by Bossier Dodge. Bossier Dodge also moved for a traditional summary judgment, asserting that it had proved its breach of contract and quantum meruit claims as a matter of law.

The trial court granted RML's motions, denied Bossier Dodge's motion, severed the claims against RML from those against RLJ Group, and signed a final judgment that Bossier Dodge take nothing on its claims against RML. This appeal followed.

**Appellate Proceedings in the Bankruptcy Proceeding**

Meanwhile, BPRE appealed both Judge King's and Judge Akard's orders to United States District Court for the Western District of Texas—Waco. On September 28, 2011, the federal district court affirmed as to all of BPRE's claims, except fraud and fraudulent inducement, which it concluded that the bankruptcy court had failed to consider. Thus, the federal district court affirmed the bankruptcy court in part, and remanded the fraud and fraudulent inducement claims for further proceedings. On remand, the bankruptcy court, on December 2, 2011 denied relief on those two claims also.

BPRE again appealed to the federal district court, which, after applying the "clearly erroneous" standard of review to the bankruptcy court's fact findings and

de novo review to its conclusions of law and mixed questions of law and fact, again affirmed the bankruptcy court.

BPRE then appealed to the Fifth Circuit Court of Appeals, arguing that the bankruptcy court lacked constitutional jurisdiction to enter a final, appealable judgment. The Fifth Circuit agreed, holding that only Article III courts, not bankruptcy courts, could decide non-core bankruptcy issues, such as those in this case, "that only seek to augment the bankruptcy estate." *In re BPRE, L.P.*, 735 F.3d 279, 291 (5th Cir. 2013). The Fifth Circuit then vacated the district court's judgment and remanded it to for further proceedings, noting:

> Because no party dispute that BPRE's claims are not core [bankruptcy] proceedings, the bankruptcy court has the authority conferred by § 157(c)(1) to issue proposed findings of fact and conclusions of law as to BPRE's state-law claims that are related to the bankruptcy estate in the event that the district court elects to refer the matter to the bankruptcy court for that limited purpose.

*Id.* Such findings of fact and conclusions of law would be reviewed de novo by the district court. *See id*. at 282.

## SUMMARY JUDGMENT RULINGS IN CAUSE NO. 01-12-00085-CV

In three issues on appeal, Bossier Dodge contends the trial court erred in granting RML's motions for summary judgment and in denying its motion.

**Standards of Review**

We review the trial courts summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the no-

`9

evidence standard, a defendant may move for summary judgment after adequate time for discovery on the ground that there is no-evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). A no-evidence summary judgment is essentially a pre-trial directed verdict; therefore, we apply the same legal-sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Under the "traditional" summary-judgment standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). In so doing, we first review the order granting summary judgment and if we determine the order was erroneous, we review the trial court's action in overruling the denied motion. *Lambrecht & Assoc., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure

of the other to discharge its burden. *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993). We may either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.— Houston [14th Dist.] 2001, pet. denied). If we determine that a fact issue precludes summary judgment for either party, we remand the claim for trial. *See Univ. of Tex. Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

**RML's Traditional Motion for Summary Judgment**

In its motion for traditional summary judgment, RML argued that "the Findings of Fact made by Judge King and the factual findings contained in the Memorandum of Opinion entered by Judge Akard, as specified below should be given collateral estoppel effect in the instant case and that Plaintiff be precluded from litigating the factual issues contained therein in the instant case." RML attached the documents filed in the bankruptcy proceeding, including Judges King's and Ackard's findings, as evidence in support of its motion.

Bossier Dodge responded that "the issues [in the state court proceeding] have not been fully litigated because all of the bankruptcy court's findings of fact and conclusions of law are subject to de novo review in the federal district court."

Based on the 5th Circuit's recent opinion in *In re BPRE, L.P,* we agree that the bankruptcy court proceedings are not a final judgment because only an Article III court can decide non-core bankruptcy issues "that only seek to augment the bankruptcy estate," and, indeed, the Fifth Circuit has vacated the very judgments upon which RML based its collateral estoppel argument. *See* 735 F.3d at 291. And, even if the district court should choose to request the bankruptcy court to issue proposed findings of fact and conclusions of law as to BPRE's state-law claims, subsequent review by the district court would be de novo. *Id.* at 282. A trial court's judgment is not final for purposes of collateral estoppel if a subsequent appeal involves de novo review. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986).

Because the bankruptcy court's judgments have been vacated, and, in any event would be subject to de novo review by the federal district court, they cannot serve as a basis for collateral estoppel. As such, the trial court erred in granting RML's Traditional Motion for Summary Judgment.[3]

---

[3] Since submission in this case, the parties have informed this Court that the federal district court has since adopted the bankruptcy court's findings of fact and has entered a final judgment that BP Automotive take nothing on its claims against RML. However, none of this information is in the record before the trial court or this Court, and RML's motion for summary judgment was based only upon the bankruptcy court's findings, not the district court's later adoption of those findings. A summary judgment may be affirmed only upon the grounds uttered by the movant in its motion. *Shih v. Tamisiea*, 306 S.W.3d 939, 946 (Tex. App.— Dallas 2010, no pet.). Nothing herein, however, precludes RML from moving for summary judgment on the basis of subsequent federal court proceedings.

We sustain Bossier Dodge's first issue.

**RML's No-Evidence Motion for Summary**

In its second issue, Bossier Dodge argues that the trial court erred in granting RML's no-evidence motion for summary judgment because Bossier Dodge produced more than a scintilla of evidence in support of each of its claims.

*Breach of Contract*

The elements of a breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In its no-evidence motion, RML argued that "Plaintiff has not provided and cannot provide any evidence of element 4 [damages]." In response, Bossier Dodge argued that it had "brought forth more than a scintilla of probative evidence to raise a genuine issue of material fact regarding the damages element of its breach of contract claim." To support this argument, Bossier Dodge attached a copy of the APA, which detailed that it would have received $180,100 if the APA had closed. Bossier Dodge attached the affidavit of W. Randy Pretzer, one of Bossier Dodge's partners, who testified that "[RML] delayed and refused to close the APA

`13

by [April 15, 2009] as required by the contract[,] and that as a result "[RML] did not pay Bossier Dodge the monies provided for in the APA."

We agree that the contract price, which was never paid as a result of RML's alleged breach of the APA, is more than a scintilla of evidence of the damages in Bossier Dodge's breach of contract claim.

Thus, the trial court erred in granting RML's no-evidence summary judgment as to Bossier Dodge's breach of contract claim.

*Tortious Interference with Existing Contracts*

The elements of a cause of action for tortious interference with a contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Review Serv., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). In its no-evidence motion for summary judgment, RML argued that "[Bossier Dodge] has not provided and cannot provide evidence with respect to its tortious interference with franchise agreements claim against Defendants."

Bossier Dodge argues that "[RML] induced Chrysler to breach its franchise agreement with Bossier Dodge after Chrysler's bankruptcy so that RML WD would be awarded the Chrysler, Dodge, and Jeep franchises in Waxahachi." In support, Bossier Dodge offers evidence that in April 2009, RMP filed a single

`14

application for a Dodge, Chrysler, and Jeep franchise, and that RML told Bossier Dodge that it had been awarded the franchises even before the franchise for Bossier Dodge had been rejected. Bossier Dodge contends that "[RML's] actions caused Chrysler to reject Bossier Dodge's franchises in May 2009."

However, Bossier Dodge presented no evidence that Chrysler was bound to continue the franchise agreements that existed prior to its bankruptcy. Indeed, the record shows that Chrysler was required to accept or reject the previously existing franchises as part of its bankruptcy. Thus, there is no evidence of an existing franchise agreement that was subject to interference once Chrysler declared bankruptcy.

And, the only willful or intentional act by RML mentioned by Bossier Dodge in its brief is RML's filing of an application for the Chrysler franchise, presumably in competition with Bossier Dodge's own application. There is no evidence by Bossier Dodge showing that such competition was a prohibited act.

There being no evidence of a continuing franchise agreement between Chrysler and Bossier Dodge or a willful or intentional act of interference by RML, the trial court properly granted RML's no-evidence motion for summary judgment on Bossier Dodge's claims for tortious interference with an existing contract.

*Tortious Interference with Prospective Business Relations*

The elements of a claim for tortious interference with a prospective business relationship are: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

RML argues on appeal that "[Bossier Dodge] failed to provide sufficient evidence of elements 1, 2, 3, or 4 with respect to its tortious interference with prospective business relations claims against RML."

Bossier Dodge responds by pointing to the affidavit of W. Randy Pretzer, in which he testified to the following:

> Without [RML's] subsequent occupation of the property and its false representations that it was going to purchase Bossier Dodge's assets or that the assets had already been sold, Bossier Dodge would have been able to sell or rent its service equipment to other auto dealerships, auto repair organizations, car rental facilities, boating or other recreational activity dealership. In fact, in April 2010, Stacey Gillman of the Gillman Automotive Group approached [Pretzer] about purchasing the Bossier Dodge assets but when she attempted to view the assets, she was rebuffed by [RML] who incorrectly told her that the assets had already been sold—to them.

`16

This testimony provides a scintilla of evidence that RML's representation to Gillman that Bossier Dodge's assets had already been sold was to prevent Bossier Dodge from selling the assets to her.

Because there is more than a scintilla of evidence to support Bossier Dodge's claim for tortious interference with prospective business relations, the trial court erred by granting RML's no evidence motion for summary judgment on this claim.

*Unfair Competition by Misappropriation*

The elements of an unfair competition or common law misappropriation claim are: (1) the creation of plaintiff's product (i.e., the trade secret information) through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff. *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).

RML contends that Bossier Dodge "failed to provide any evidence of elements 2 or 3 with respect to its unfair competition by misappropriation claim." In support of this claim, Bossier Dodge presented Pretzer's affidavit, in which he testified:

[RML] began occupying the dealership property and using Bossier Dodge's assets as early as May 2009, including transitioning their dealer inventory system. At this point, [RML] had access to Bossier Dodge's customer lists, which were created over a several year period through much effort by employees and managers of Bossier Dodge. At no time did Bossier Dodge authorize Defendants to keep or use Bossier Dodge's customer lists without payment because Bossier Dodge knew that any use of the customer lists would reduce their value (as the information contained would be less desirable to others.)

There is also evidence in the showing that RML has serviced over 800 customers who appear on Bossier Dodge's lists.

Thus, Bossier Dodge has produced at least a scintilla of evidence to support its claim that RML participated in unfair competition by misappropriating its customer lists. Because Bossier Dodge presented a scintilla of evidence, the trial court erred in granting RML's no-evidence motion for summary judgment on Bossier Dodge's unfair competition by misappropriation claim.

*Quantum Meruit*

The elements of a quantum meruit claim are (1) valuable services or materials provided by plaintiff to the defendant, (2) who accepted the services or materials, (3) under such circumstances as would reasonably notify defendant that the plaintiff expect to be paid. *See Speck v. First Evangelical Lutheran Church of Hous.*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.)

RML contends that "[Bossier Dodge] failed to provide sufficient evidence of elements 3 or 4 with respect to its quantum meruit claim." However, there is

`18

summary judgment evidence that, for a period of time, RML had two technicians working out of Bossier Dodge's facilities. Pretzer testified about the use by RML as follows:

> [RML] used Bossier Dodge's assets between May and August 2009 without ever paying for that use. Bossier Dodge never authorized use of its assets by anyone without payment.

Thus, Bossier Dodge has produced at least a scintilla of evidence in support of its quantum meruit claim. As such, the trial court erred by granting RML's no-evidence motion for summary judgment on Bossier Dodge's quantum meruit claim.

*Fraud*

The elements of a fraud claim are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

RML contends that "[Bossier Dodge] failed to provide sufficient evidence of elements 1, 2, 3, 4, or 5." In response, Bossier Dodge points to evidence in the

`19

record that RML had made a material misrepresentation when its representatives told Bossier Dodge that obtaining a Jeep franchise was not a condition necessary for closing under the APA. An early draft of a letter of intent had indicated that obtaining a Jeep dealership would be a condition to closing the APA, but Bossier Dodge had the language removed because it did not possess the Jeep franchise and could not control the timing of its acquisition by RML. In the meantime, RML had applied for Chrysler, Dodge, and Jeep franchises. Bossier Dodge presented evidence that, had it known that RML was also pursuing a Jeep franchise, it never would have entered the APA.

Thus, Bossier Dodge has produced at least a scintilla of evidence in support of its fraud/fraudulent inducement claim. As such, the trial court erred by granting RML's no-evidence motion for summary judgment on Bossier Dodge's fraud/fraudulent inducement claim.

*Civil Conspiracy*

The elements of civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

RML contends that "[Bossier Dodge] failed to provide sufficient evidence of elements 1, 2, 3, 4 or 5 with respect to its civil conspiracy claim against [RML]."

`20

In response, Bossier Dodge argues that there is, at least, circumstantial evidence "indicating that Defendants conspired with each other, with Chrysler, and with the Federal Government to tortuously interfere with Bossier Dodge's existing and prospective contracts and to commit fraud." In support, Bossier Dodge points to evidence that it contends indicates that RML had advance knowledge that Chrysler would enter bankruptcy, and that none of its own franchises would be affected by the bankruptcy. Bossier Dodge's position is that Chrysler, RML, and/or the federal government conspired "to have Chrysler award [RML] the exact same dealership franchises that RML wrongfully failed to pay Bossier Dodge for as required by the APA."

However, there was no evidence that Chrysler was required to continue Bossier Dodge's franchise agreement or to refrain from awarding a franchise to RML. Thus, "conspiring" to award a franchise to RML cannot be an unlawful, overt act in furtherance of a civil conspiracy. Thus, the trial court properly granted RML's no-evidence motion for summary judgment on Bossier Dodge's civil conspiracy claim.

*Conclusion as to RML's No-Evidence Motion for Summary Judgment*

We sustain Bossier Dodge's second issue as it relates to its breach of contract, tortious interference with prospective business relations, unfair competition by misappropriation, quantum meruit, and fraud, but overrule its

`21

second issue as to its tortious interference with existing contracts and civil conspiracy claims.

**Bossier Dodge's Traditional Motion for Summary Judgment**

In its third issue, Bossier Dodge argues that the trial court erred in denying its own motion for summary judgment, in which it claimed that it had proved its breach of contract and quantum meruit claims as a matter of law.

*Breach of Contract*

Bossier Dodge argues that the trial court erred in denying its traditional motion for summary judgment because "[RML] breached the APA when it failed to close on April 15, 2009, because the contract requires that the parties close on that date unless it is logistically impossible and [RML] has never claimed that it was logistically impossible to close."

However, the APA does not require closing by April 15, 2009 "unless logistically impossible." Rather, the APA requires closing by April 15, 2009 "or as soon thereafter as practical." RML contends that it was not "practical" to close until it was able to secure a valid evidence of franchise and license to operate a car dealership at the location. The parties' disagreement as to when it was "practical" to close presents a fact question for the jury to resolve. There being a fact issue on the issue of whether RML breached the contract by failing to close on April 15, 2009, the trial court did not err in denying Bossier Dodge's traditional motion for

summary judgment claiming that it had proved its breach of contract claim as a matter of law.

*Quantum Meruit*

Bossier Dodge asserted that RML "used Bossier Dodge's assets to perform maintenance activities, make telephone calls, and to prepare for the operation of a dealership without compensating Bossier Dodge for their use," thus "Bossier Dodge is entitled to partial summary judgment on its quantum meruit claim."

As stated earlier, the elements of quantum meruit are (1) valuable services or materials provided by plaintiff to the defendant, (2) who accepted the services or materials, (3) under such circumstances as would reasonably notify the defendant that the plaintiff expect to be paid. *See Speck*, 235 S.W.3d at 815.

In response to Bossier Dodge's motion, RML challenged the third element. Specifically, RML presented evidence of a July 8, 2009 email from Pretzer to RML giving RML permission to let its technicians use the service department. RML also presented evidence that Bossier Dodge never told it that payment was expected in return for this use until it initiated this suit. This evidence is sufficient to raise a fact issue as to whether "circumstances would reasonably notify" RML that Bossier Dodge expected to be paid. There being a fact issue on the third element listed above, the trial court did not err by denying Bossier Dodge's traditional motion for summary judgment on its quantum meruit claim.

`23

**CONCLUSION AS TO CAUSE NO. 01-12-00085-CV**

Because the bankruptcy court's judgments have been vacated and would nonetheless be subject to de novo review by the federal district court, they cannot serve as a basis for collateral estoppel, and the trial court erred in granting RML's Traditional Motion for Summary Judgment.

Because Bossier Dodge presented at least a scintilla of evidence to support its breach of contract, tortious interference with prospective business relations, unfair competition by misappropriation, quantum meruit, and fraud claims, the trial court erred in granting RML's no-evidence motion for summary judgment on those claims. However, because Bossier Dodge's evidence did not prove its breach of contract or quantum meruit claims as a matter of law, the trial court did not err in denying Bossier Dodge's traditional motion for summary judgment on those claims. Because neither party carried its summary judgment burden on these issues, we reverse the trial court's no-evidence summary judgment on Bossier Dodge's breach of contract, tortious interference with prospective business relations, unfair competition by misappropriation, quantum meruit, and fraud claims, and remand those claims for further proceedings.

Because Bossier Dodge did not bring forth a scintilla of evidence to support its claim for tortious interference with existing contracts, i.e., it had no evidence of an existing contract with Chrysler after Chrysler's bankruptcy, the trial court did

`24

not err in granting RML's no-evidence motion for summary judgment on Bossier Dodge's claim for tortious interference with existing contracts. Similarly, Bossier Dodge did not bring forth a scintilla of evidence on its civil conspiracy claim, i.e., there was no evidence of an illegal act in furtherance of a conspiracy. Accordingly, we affirm the trial court's no-evidence summary judgment as to Bossier Dodge's tortious interference with existing contracts and civil conspiracy claims.

**SUMMARY JUDGMENT RULINGS IN CAUSE NO. 01-12-00346-CV**

**Additional Background**

In addition to the facts detailed above, the following information is relevant to this Court's resolution of Cause No. 01-12-00346-CV. When Bossier Dodge sued RML Waxahachie Dodge, L.L.C., RLJ-McLarty-Landers Automotive Holdings, L.L.C., RML Waxahachie Ford, L.L.C., and RML Waxahachie GMC, L.L.C. [collectively, "RML," the defendants in Cause No. 01-12-00085-CV], it also sued RLJ-McLarty-Landers Automotive Group ["RLJ Group," the defendant in Cause No. 01-12-00346-CV] and asserted the same claims against RLJ Group as were asserted against RML. Each of the RML defendants filed verified denials, asserting:

> Defendant also specifically denies that the named Defendant "RLJ-McLarty-Landers Automotive Group" is a separate entity. The Defendants have, in the past, referred to RLJ-McLarty-Landers Automotive Holdings, LLC as "RLJ-McLarty-Landers Automotive Group" to reflect the separate auto dealership entities in which RLJ-McLarty-Automotive Holdings, LLC holds an ownership interest, but

`25

it is nothing more than an informal reference to several limited liability companies with a common member.

Despite the denial that RLJ Group was nothing more than a pseudonym for RLJ-McLarty-Landers Automotive Holdings, L.L.C., Bossier Dodge served discovery requests on RJL Group. The RML defendants moved for a protective order on behalf of RLJ Group, and Bossier Dodge moved to compel discovery from RLJ Group. On February 24, 2011, the trial court "ORDERED that the party named 'RLJ-McLarty-Landers Automotive Group' is protected from the discovery sought by Plaintiff on August 8, 2010, and October 1, 2010 and that no further discovery may be sought from the party named 'RLJ-McLarty-Landers Automotive Group' in this proceeding." Although there is no separate order, the trial court's ruling implicitly overrules Bossier Dodge's motion to compel discovery from RLJ Group.

All of the RLM defendants moved for traditional and no-evidence summary judgment on March 8, 2011, and the trial court granted their motions on August 15, 2011. It then severed Bossier Dodge's claims against RLJ Group into a separate cause (trial court cause no. 10-030B-1 and appeal no. 01-12-00346-CV).

Despite its claims that it was not a legal entity, RJL Group filed both traditional and no-evidence motions for summary judgment that mirrored those that the trial court had already granted in favor of the RLM defendants. Bossier Dodge filed motions to show authority and for continuance, which the trial court

denied. On December 20, 2011, the trial court granted RLJ Group's no-evidence and traditional motions for summary judgment. This appeal followed.

In several related issues on appeal, Bossier Dodge contends the trial court erred in granting RLJ Group's no-evidence and traditional motions for summary judgment. Bossier Dodge also contends the trial court erred in granting RLJ Group's protective order and disallowing further discovery.

**Standard of Review**

We review the trial court's summary judgments de novo. *Joe*, 145 S.W.3d at 156. Under the no-evidence standard, a defendant may move for summary judgment after adequate time for discovery on the ground that there is no evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). A no-evidence summary judgment is essentially a pre-trial directed verdict; therefore, we apply the same legal-sufficiency standard. *King Ranch, Inc.*, 118 S.W.3d at 750–51. Under the "traditional" summary-judgment standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16.

**RLJ Group's Motions for Traditional and No-Evidence Summary Judgment**

In its appellate brief, RLJ Group argues that "[t]he Trial Court's summary judgment rulings with respect to [the RML defendants] apply equally to RLJ Group, as none of the determinations made by the Trial Court were dependent upon the entity status of RLJ Group or any other party." We agree.

RLJ Group did not move for summary judgment, either no-evidence or traditional, based on its argument that it was not a legal entity. Instead, its motions mirror those filed by RML. Thus, for the reasons detailed above in Cause No. 01-12-00085-CV, we hold that the trial court erred in granting RLJ Group's traditional motion for summary judgment because no collateral estoppel can be applied to the bankruptcy court's findings, which have been vacated and would nonetheless subject to de novo review by the federal district court. We similarly hold that Bossier Dodge presented at least a scintilla of evidence as to each of its claims, except for the tortious interference with existing contract and civil conspiracy claims. Therefore, the trial court also erred in granting RLJ Group's no-evidence motion for summary judgment on all claims except the tortious interference with existing contracts and civil conspiracy claims.

**Denial of Motion to Compel Discovery and Motion to Show Authority**

Bossier Dodge also complains that the trial court erred in granting the summary judgments because it refused to compel discovery from RLJ Group and

granted the summary judgments without first holding a hearing to determine the authority of RLJ Group's attorneys to file motions on its behalf. Bossier Dodge contends that "[i]ndeed, if a non-entity, the RLJ Group could not retain counsel or file motions on its behalf."

In light of our reversal of the summary judgments and remand of Bossier Dodge's breach of contract, tortious interference with prospective business relations, unfair competition by misappropriation, quantum meruit, and fraud claims, we need not address whether the trial court also erred in granting the summary judgments on these grounds because of its rulings on the discovery motion and motion to show authority.

Regarding the two claims that this Court affirmed—tortious interference with existing contracts and civil conspiracy—Bossier Dodge cannot show that any error in limiting discovery or failing to hold a hearing on the motion to show authority probably caused the rendition of an improper judgment or prevented it from properly presenting the case to this Court. *See* TEX. R. APP. P. 44.1. This Court affirmed the no-evidence summary judgment as to the tortious interference with existing contracts because, once Chrysler went into bankruptcy, it had to either approve or reject Bossier Dodge's franchise, i.e., there was no existing franchise with which to interfere. And, this Court affirmed the no-evidence summary judgment as to the civil conspiracy claim because Chrysler was not

required to continue Bossier Dodge's franchise or to refrain from awarding a franchise to RML. The trial court's rulings on the discovery and authority issues, even if erroneous, would have no effect of this Court's ultimate holding on the tortious interference with existing contracts and civil conspiracy claims. Thus, we overrule Bossier Dodge's claim on this issue.

## CONCLUSION AS TO CAUSE NO. 01-12-00346-CV

Because the bankruptcy court's judgments have been vacated and would nonetheless be subject to de novo review by the federal district court, they cannot serve as a basis for collateral estoppel, and the trial court erred in granting RLJ Group's Traditional Motion for Summary Judgment.

Because Bossier Dodge presented at least a scintilla of evidence to support its breach of contract, tortious interference with prospective business relations, unfair competition by misappropriation, quantum meruit, and fraud claims, the trial court erred in granting RLJ Group's no-evidence motion for summary judgment on those claims, and we reverse the no-evidence summary judgment on those claims and remand them for further proceedings.

Because Bossier Dodge did not bring forth a scintilla of evidence to support its claims for tortious interference with existing contracts or civil conspiracy, the trial court did not err in granting RLJ Group's no-evidence motion for summary judgment on Bossier Dodge's claims for tortious interference with existing

`30

contracts and civil conspiracy. Accordingly, we affirm the trial court's no-evidence summary judgment as to these claims only.

We overrule all pending motions.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.