ACCEPTED
06-13-00132-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/15/2015 11:29:32 AM
DEBBIE AUTREY
CLERK

**No. 06-13-00132-CV**

In the

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

1/15/2015 11:29:32 AM

DEBBIE AUTREY
Clerk

**Sixth Court of Appeals**

# Texas Farm Bureau Underwriters,

Appellant/Defendant

vs.

# Terry Graham

Appellee/Plaintiff

# Appellee's Motion for Rehearing

**Marisa M. Schouten**
Bar I. D. No. 24039163
Reid Wm. Martin
Bar I.D. No. 13098986
**Martin Walker, P.C.**
121 N. Spring Avenue
Tyler, Texas 75702
(903) 526-1600 Telephone
(903) 595-0796 Telefax

**Attorneys for Appellee/Plaintiff, Terry Graham, Jr.**

# TABLE OF CONTENTS

List of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.       Points Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         A. When this court interpreted "no way of knowing why" as a motive
         question and not a clear expression by the plaintiffs that they do not know
         how this incident occurred, this court impermissibly made inferences in
         favor of the insurance company and not the insured. . . . . . . . . . . . . . . . . . . 2

         B. When this court assumed Graham "pointed a shotgun at a person's head,"
         a fact that is not in the petition, this Court went outside the 8 corners, and
         made inferences that were not in the petition, and the analysis was
         subsequently flawed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

         C. This Court erred in applying *Griffin* to this case because *Griffin* is an
         opinion about auto policies, a type of policy that contemplates car wrecks,
         not general negligence on a premises such as gun accidents. . . . . . . . . . . . 4

         D. This Court also erred in applying *Griffin* to the case at hand because
         *Griffin*'s "origin of damages" logic focused on the presence of extreme
         conduct and was fact specific about why that act was intentional and could
         never be construed as an accident. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.     Conclusion and Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.      Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## APPENDIX

1. This Court's Opinion, Cause No. 06-13-00132-CV, *Texas Farm Bureau Underwriters v. Graham*, dated December 5, 2014.

# AUTHORITIES

## Cases:

*D.R. Horton-Texas Ltd. v. Markel Int'l Ins. Co., Ltd.*,
   300 S.W.3d 740 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Farmers Texas County Mut. Ins. Co. v. Griffin*,
   955 S.W.2d 81 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*,
   197 S.W.3d 305 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# I. POINTS PRESENTED FOR REVIEW

1. When this court interpreted "no way of knowing why" as a motive question and not a clear expression by the plaintiffs that they do not know how this incident occurred, this court impermissibly made inferences in favor of the insurance company and not the insured.

2. When this court assumed Graham "pointed a shotgun at a person's head", a fact that is not in the petition, this Court went outside the 8 corners, and made inferences that were not in the petition, and the analysis was subsequently flawed.

3. When this court assumed the act of firing was intentional, this court impermissibly made inferences in favor of the insurance company and not the insured.

4. *Griffin* is an opinion about auto policies, a type of policy that never contemplates gun accidents. When this court relied upon *Griffin* to set precedent for a homeowner's policy, in which gun accidents are contemplated, this court erred.

## II. Argument

**A. When this court interpreted "no way of knowing why" as a motive question and not a clear expression by the plaintiffs that they do not know how this incident occurred, this court impermissibly made inferences in favor of the insurance company and not the insured.**

The petition has a crucial sentence that makes two factual allegations and establishes that the plaintiffs don't know how this incident occurred: (1) "no way of knowing why" this happened, (2) "because the only living persons who participated in the events leading up to [Chambers's] untimely and tragic death" are Graham and Osborne. The second factual allegation cannot be ignored. The plaintiff was not there and doesn't know how this happened.

Equally consistent with the set of facts alleged in the petition is that Osborne fumbled the gun to Graham, and in an attempt to keep the gun from falling to the ground, the gun went off.

When the Court construed "no way of knowing why" as only a statement about motive, and disregarded the rest of the sentence, the Court impermissibly gave the inference to the insurance company, and not the insured.[1] In other locations in the opinion, it is likewise clear that the Court gave the inference to the insurance company, and not the insured.

---

[1] From this Court's opinion, "While they may not have been aware of Graham's motive for shooting Chambers, the Chambers family knew how the shooting occurred." Tab 1, p.13.

2

For example, the petition:

(1) never alleges Graham "pointing the gun at Chambers and pulling the trigger"[2]

(2) never alleges how Graham actually used the shot gun "to bring about the death" of Chambers,

(3) never alleges why Chambers was on Graham's property, or what activity was occurring at the time the shotgun blast went off.

Because this Court did not correctly apply the standard of review to the set of facts at hand, this Court should grant rehearing.

**B. When this court assumed Graham "pointed a shotgun at a person's head", a fact that is not in the petition, this Court went outside the 8 corners, and made inferences that were not in the petition, and the analysis was subsequently flawed.**

Finally, the Court assumes that the act of firing the weapon was intentional.[3] In this Court's opinion, the Court stated "Because Chamber's death was the type of injury that ordinarily follows **from pointing a shotgun at a person's head** and shooting him or her 'at very close range,' we conclude that the injury was a natural and probable result of Graham's act."[4]

---

[2]Tab 1, p.11, 15.

[3] "Here, the act of firing the weapon was intentional, and, as explained below, the result was forseeable." Tab 1, p.14 n.12.

[4]Tab 1, p.15.

3

The Court assumed Graham (1) pointed a shotgun at a person's head and (2) pulled the trigger. Those facts are not in the petition–the Court went outside the 8 corners.

Because this Court did not correctly apply the standard of review to the set of facts at hand, this Court should grant rehearing.

**C. This Court erred in applying *Griffin* to this case because *Griffin* is an opinion about auto policies, a type of policy that contemplates car wrecks, not general negligence on a premises such as gun accidents.**

This Court erred in relying on an auto policy case and improperly extrapolating from an auto policy case to a farm and ranch policy case. It is beneficial to review the differences in policy language as well as the general intention of what is to be covered in order to understand why *Griffin*'s rule does not apply here. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

|  | **Auto Policy (*Griffin*)** | **Farm & Ranch Owner Policy (*Graham*)** |
|---|---|---|
| Coverage | Insurance "will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an <u>auto accident</u>"<br><br>"Covered person" means "you or any family member for the ownership, maintenance, <u>or use of any auto or trailer</u>." | "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an <u>occurrence</u>" we will "provide a defense… even if the suit is groundless, false or fraudulent."<br><br>"Occurrence" means "an accident, including exposure to conditions which results in bodily injury or property damage during the policy period." |
| Exclusion | "who intentionally causes bodily injury or property damage" | "bodily injury or property damage which is caused intentionally by or at the direction of an insured." |

The intent of the policies is reflected in the coverage language. An auto policy protects other drivers and their property <u>in the event the insured is found at fault for causing a car wreck</u>. Whereas, a farm and ranch owner's policy <u>protects the insured against expenses resulting from someone getting hurt in the insured's home or on the insured's property</u>. This is the general industry understanding and interpretation of the way the coverage works.

Accordingly, when a 'gun incident' occurs and an auto policy is at issue, the analysis is completely different than when a 'gun incident' occurs and a farm and ranch owner's policy is at issue. In the Supreme Court's own words, **no**

5

**"facts can be developed... that can transform a drive-by shooting into an auto accident."** *D.R. Horton-Texas Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744-45 (Tex. 2009) (recognizing the limitations of *Griffin*). However, insurance companies are routinely called upon, and accept coverage for, gun incidents on premises through home owners or farm and ranch owners policies.

**D. This Court also erred in applying *Griffin* to the case at hand because *Griffin*'s "origin of damages" logic focused on the presence of extreme conduct and was fact specific about why that act was intentional and could never be construed as an accident.**

In *Griffin*, the petition "alleged facts indicating that the origin of his damages was intentional behavior", and no facts could be developed that would transform a drive-by into an auto accident:

- "suddenly and without warning, a vehicle driven by [Royal] approached Mr. Griffin. Several rounds of gunfire were discharged from the vehicle in the direction of the Plaintiff."

- "This drive-by shooting was a random act of violence which has permanently injured and scarred the plaintiff"

- **"He made no factual contention that could constitute negligent behavior by Royal."**

Since the *Griffin* case, the Supreme Court has said that *Griffin* is "fact-specific" and can't be construed broadly:

6

In *Griffin*, the issue was whether facts developed in the underlying tort suit for injuries caused by a drive-by shooting could form the basis for coverage under an automobile insurance policy. **We explained in that case that no "facts can be developed in the underlying tort suit that can transform a drive-by shooting into an auto accident."**

**This conclusion was <u>grounded</u> on the <u>impossibility</u> that the drive-by shooting in that case could be transformed by proof of <u>any</u> <u>conceivable set</u> <u>of facts</u> into an <u>auto accident</u> covered by the insurance policy.**

*D.R. Horton*, 300 S.W.3d at 744-45.

In contrast, here, sufficient facts are alleged that give rise to a conceivable set of facts for negligence, where a farm and ranch owner's policy is at issue, and it's not "impossible" or even a stretch:

- "On or about February 18, 2007...Chambers, was shot and killed by Defendant...on property owned by [Graham]"

- "Plaintiff has no way of knowing why [Chambers] was killed by Terry Graham, Jr. because the only living persons who participated in the events leading up to his untimely and tragic death are the two Defendants..."

- "Chambers was shot with a 410 shotgun at very close range and that the entry wound was behind his left ear."

- "Plaintiff further alleges that Mr. Graham was negligent and grossly negligent in causing the death of Mr. Chambers."

CR 211-214. As explained by the Supreme Court in *GuideOne*, the burden is easy to meet–a plaintiff's factual allegations that even "potentially" support a covered claim is "all that is needed" to invoke the insured's duty to defend.

7

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006).

That burden is met. To determine otherwise impermissibly gives inferences in favor of the insurer.

## III. CONCLUSION AND PRAYER

For these reasons, this Court should grant the motion for rehearing, affirm the trial court's judgment and tax costs against Farm Bureau.

Respectfully submitted,



121 N. Spring Street
Tyler, Texas 75702
(903) 526-1600 Telephone
(903) 595-0796 Telefax

By:      ___/s/ Marisa Schouten_____
Marisa M. Schouten
Bar I.D. No. 24039163

Reid Wm Martin
Bar I.D. No. 13098986

ATTORNEYS FOR APPELLEE

9

## Certificate of Service

On the 15th day of January, 2015, I forwarded, via email, regular U.S. mail, certified mail, return receipt requested, hand delivery or fax transmission, a copy of this brief as follows:

All counsel of record


_____/s/ Marisa Schouten_____
Marisa Schouten

## Certificate of Compliance

I hereby certify that, using the word processing functions of this computer, this document has 1,998 words.


_____/s/ Marisa Schouten_____
Marisa Schouten

APPENDIX 1



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00132-CV

TEXAS FARM BUREAU UNDERWRITERS, Appellant

V.

TERRY GRAHAM, JR., Appellee

On Appeal from the 241st District Court
Smith County, Texas
Trial Court No. 10-2640C

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

Terry Graham, Jr., shot and killed would-be burglar, Hiram Joshua Chambers, at Graham's ranch house in Smith County, Texas.[1] In successfully defending the resulting wrongful death lawsuit by Chambers' family members,[2] Graham incurred $130,841.43 in defense costs, which Graham seeks to recover from Texas Farm Bureau Underwriters (Underwriters), the issuer of Graham's Texas Farm and Ranch Owner's Insurance Policy.[3] From competing motions for summary judgment, contesting the question of whether Underwriters had the duty to defend Graham in the Chambers lawsuit, the trial court awarded Graham judgment. Underwriters appeals. Because, under the terms of the policy, there was no duty to defend the Chambers lawsuit, we reverse the trial court's judgment and render a take-nothing judgment in favor of Underwriters.

---

[1]Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]After Graham shot Chambers, Chambers' ex-wife, Amanda Chambers, as next friend of Austin Blaine Chambers and Elizabeth Atlee Chambers (collectively referred to as the Chambers family), sued Graham and his ranch manager, Guy Lee Osborn, for wrongful death in the County Court at Law No. 2 of Smith County, Texas, cause number 54,726-A (the Chambers lawsuit). After conducting some discovery, the Chambers family filed a second amended petition detailing the events of the shooting. They later dismissed Osborn from the lawsuit.

[3]Once served with the Chambers lawsuit, Graham turned to the provisions of his insurance policy, which required Underwriters, under certain circumstances, to provide a defense in lawsuits arising out of bodily injury occurring on Graham's property. Underwriters denied that it had any duty to defend Graham on the ground that the shooting was not a covered occurrence under the policy. Graham paid for his own defense costs as the Chambers lawsuit proceeded to trial. The trial court's charge in the Chambers lawsuit instructed the jury that Chambers was burglarizing Graham's residence when he was shot. The jury found (1) that Graham did not "intentionally, knowingly, or recklessly cause bodily injury to [Chambers]," (2) that Graham did not "intentionally or knowingly threaten [Chambers] with imminent bodily injury," (3) that Graham did not "intentionally or knowingly cause physical contact with [Chambers] when he knew or should [have] reasonably believe[d] that [Chambers would] regard the contact as offensive," (4) that Graham was not negligent, (5) that Graham's use of deadly force was justified, and (6) that Chambers caused his own death.

2

We review de novo a trial court's grant of summary judgment. *Thompson v. Weaver*, 429 S.W.3d 897, 901 (Tex. App.—Tyler 2014, no pet.) (citing *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010)); *see Transp. Int'l Pool, Inc. v. Cont'l Ins. Co.*, 166 S.W.3d 781, 784 (Tex. App.—Fort Worth 2005, no pet.) ("Because the question of an insurance carrier's contractual duty to defend is one of law, we must conduct a de novo review."). In a traditional summary judgment motion, the movant has the burden to demonstrate no fact issue exists. *Thompson*, 429 S.W.3d at 901 (citing TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). "Once the movant has established a right to summary judgment, the burden of proof shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment." *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). We examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Id.* (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).

When there are cross-motions for summary judgment, each movant claims that there is no fact issue. *Id.* at 902 (citing *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.)). Thus, "[i]f one motion is granted and the other denied, we must review the summary judgment evidence presented by both sides and determine all questions presented." *Id*. If we find that the grant of one summary judgment was improper, we may reverse and render the judgment the trial court should have rendered. *Id.*

3

It is uncontested (1) that Graham was an insured under the policy, (2) that he had paid all premiums required under the policy, (3) that he had personal liability coverage for bodily injury occurring on the resident premises as of the date of the incident, (4) that the incident occurred on the resident premises, and (5) that Underwriters received timely notice of Graham's request for defense. Seeking reimbursement of the money he paid to his defense attorneys, Graham sued Underwriters for breach of contract, breach of the duty of good faith and fair dealing under Chapter 542 of the Texas Insurance Code (the Prompt Payment of Claims Act), and attorney fees in bringing this lawsuit.[4]

Underwriters filed a legal denial based on the governing "eight corners rule," which provides that an insurer is entitled to rely solely on the factual allegations contained in the four corners of the complaint in conjunction with the four corners of the liability policy to determine whether it has a duty to defend. *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). In its answer, Underwriters argued that the eight corners rule precluded recovery because (1) the Chambers family's petition established that the incident was not a covered occurrence and (2) the policy expressly excluded coverage for bodily injury caused by an intentional act of the insured. Underwriters filed a traditional motion for summary judgment on its legal defense. In response, Graham filed a cross-motion for summary judgment, arguing (1) that Underwriters' duty to defend was established by the jury's

---

[4]Graham also brought extra-contractual claims against Underwriters. The trial court severed Graham's contractual claims from his extra-contractual claims pursuant to a conditional grant of Underwriters' petition for writ of mandamus issued by the Tyler Court of Appeals. In its final judgment, the trial court stayed the extra-contractual claims pending the conclusion of the appeal from the contractual claims at issue here.

finding of no wrongdoing on Graham's part and (2) that the policy's exclusion for intentional acts did not apply to the Chambers family's allegations of negligence and gross negligence.

After reviewing the summary judgment evidence, the trial court denied Underwriters' motion and granted Graham's cross-motion, ruling that Underwriters should have defended Graham in the Chambers lawsuit. In its final judgment for Graham on his breach of contract claim, the trial court recited, "[T]he parties hereto had stipulated to the amount of damages following the Court's ruling on the liability issue" and awarded $225,286.92 in damages to Graham in accordance with the stipulation. Relying on the eight corners rule, Underwriters appeals.

Underwriters is correct in its assertion that this case is governed by the eight corners rule. "'[A]n insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend.'" *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) (quoting *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 142; *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997)). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* at 654.

When applying the eight corners rule, "we construe the allegations in the pleadings liberally." *GEICO Gen. Ins. Co. v. Austin Power Inc.*, 357 S.W.3d 821, 824 (Tex. App.— Houston [14th Dist.] 2012, pet. denied) (citing *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "The factual allegations are considered without regard to their truth or falsity[,] and all doubts regarding the duty to defend

5

are resolved in the insured's favor." *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). Thus, "[i]n reviewing the pleadings and making the determination under the eight corners rule regarding an insurer's duty to defend, courts look to the factual allegations showing the origin of the damages claimed, not the legal theories or conclusions alleged." *Id.*; *see Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).

An insurer is obligated to defend the insured if the facts alleged in the petition "present a matter that could potentially be covered by the insurance policy." *Id.*; *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see Austin Power Inc.*, 357 S.W.3d at 824 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). In case of ambiguity in the underlying petition, "[w]e will not read facts into the pleadings . . . . Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Pine Oak Builders, Inc.*, 279 S.W.3d at 655; *see Austin Power Inc.*, 357 S.W.3d at 824.

"The insured has the initial burden to establish coverage under the policy." *Ewing*, 420 S.W.3d at 33. "If it does so, then to avoid liability the insurer must prove one of the policy's exclusions applies." *Id*. "If the insurer proves that an exclusion applies, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage." *Id.*

"Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts. When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

6

The initial four corners to consider are the four corners of the insurance policy. The terms of Graham's personal liability coverage provide,

> **COVERAGE C (Personal Liability).** If a claim is made or a suit is brought against an insured for damages because of bodily injury[5] or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1. pay up to our limit[6] of liability for the damages for which the insured is legally liable.
>
> 2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent . . . .[7]

The policy defines the term "occurrence" as "an accident, including exposure to conditions which results in bodily injury or property damage during the policy period." It also contains the following exclusion: "**Coverage C (Personal Liability) . . . do[es] not apply to:** . . . bodily injury or property damage which is caused intentionally by or at the direction of an insured."

The other four corners to consider are those set out in the Chambers family's petition. We first look to the live pleading in the Chambers lawsuit. The second amended petition in the Chambers lawsuit omitted the fact that Chambers was committing burglary of a habitation when he was shot. Instead, the petition stated that the Chambers family "had no way of knowing why . . . Chambers was killed . . . because the only two people who participated in the events leading up to his untimely and tragic death" were Graham and Osborn. The Chambers family alleged

---

[5]The policy defined "bodily injury" as "bodily harm, sickness or disease." The policy continued, "This [coverage] includes required care, loss of services and death that results."

[6]The personal liability policy limit was $1,000,000.00 per occurrence.

[7]The policy stated, "We pay . . . expenses we incur and costs taxed against an insured in any suit we defend" and "interest on the entire judgment which occurred after entry of the judgment and before we pay or tender or deposit in court that part of the judgment which does not exceed the limit of liability that applies."

both that Graham committed "a violent assault and battery" on Chambers and, in the alternative, that Graham was "negligent and grossly negligent" in causing Chambers' death. The petition contained the following allegations:

> Plaintiff alleges that just before Terry Graham, Jr.'s vicious assault on [Chambers], he had directed [Osborn] to bring to him a loaded 410 shotgun. Before the death of [Chambers], [Graham] had instructed [Osborn] to shoot [Chambers], but [Osborn] refused to do so. Instead, [Osborn] carelessly, negligently, and very foolishly handed the shotgun to [Graham], who then used it to carry out his intent and purpose of bringing about the death of [Chambers].

Even though the eight corners rule prohibits us from looking beyond the Chambers family petition and the terms of the insurance policy, Graham asks this Court to consider extrinsic evidence in our analysis. To demonstrate that Underwriters had a duty to defend, Graham relies (1) on a fact that was not included in the underlying petition—that Chambers was burglarizing the property when he was shot, (2) on the jury's verdict absolving Graham of liability for Chambers' death, and (3) on the following excerpt from the deposition of Underwriters' corporate representative, John Adtkins:

> Q. If you took out the alternative theory of an intentional tort out of this case; so, you took out the we say he had intent; although, we all know she had no idea because she wasn't there and she says it in there that she wasn't. But if you take that out and the negligence, he's on the property, there's a gun involved, the gun goes off, it shoots him and he's negligent and there's no intentional tort pled and there's no allegation that he intended to do it, you'd defend that case, wouldn't you?
>
> [By Underwriters counsel]: Objection, form.
>
> A. I would have to read it; but, yes, I mean, if the intent was not in there, that changes our evaluation.
>
> Q. [Graham's counsel] Right. Because you're not going to say, well, there's not enough facts in there to prove that you were negligent, we're not

8

defending this case, just go on out there on your own, Mr. Insured, they didn't say it right. You'd never do that, would you?

[By Underwriters counsel]: Objection, form.

Q. [Graham's counsel] You'd hire him a lawyer, wouldn't you, sir?

A. If the facts did not have intent and purpose, you're right, then, yes, we would. I mean, I can't imagine what the rest of the petition would say. But if it was specifically remove those words, then yes.

Q. Yeah. If it said specifically what the second amended petition says absent the intent sentence and the intentional tort claim, those facts, that cause of action gets him a lawyer paid for by his insurance company, doesn't it?

[By Underwriters counsel]: Objection, form.

A. Without those words, yes.

Reliance on this kind of extrinsic evidence violates the eight corners rule. *See GuideOne Elite Ins. Co.*, 197 S.W.3d at 309. Consequently, Graham asks this Court to recognize a rule exception referenced in a Texas Supreme Court opinion. In *Pine Oak Builders, Inc.*, the Texas Supreme Court noted that some courts have recognized an exception "permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. Without expressly recognizing or approving the exception, *Pine Oak Builders, Inc.* warned that "any such exception would not extend to evidence that was relevant to both insurance coverage and the factual merits of the case as alleged by the third-party plaintiff." *Id.*; *see GuideOne Elite Ins. Co.*, 197 S.W.3d at 310.[8] To date, neither the Texas Supreme Court nor

---

[8]Certainly, the jury's verdict in the Chambers lawsuit speaks directly to the merits. Thus, its consideration would be disallowed, even if we were to recognize an exception to the eight corners rule, which we do not.

the Tyler Court of Appeals has officially embraced any exception to the eight corners rule, and our sister courts have declined to apply the exception referenced in *Pine Oak Builders, Inc. See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 394 S.W.3d 228, 235 (Tex. App.—El Paso 2012, pet. denied) (declining to recognize any exception to eight corners rule); *AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W.3d 264, 273 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (same). Because the Tyler Court of Appeals has not spoken on this issue, we refuse to determine that it would recognize an exception to the eight corners rule. Thus, we focus only on the policy terms and the underlying petition in determining whether Underwriters had a duty to defend.

We must determine whether the Chambers family's petition alleged that Graham committed a negligent act in addition to an intentional one. Graham claims that the Chambers family "pled . . . two distinct positions with regard to state of mind." In support of his argument that the petition alleged a negligent state of mind, Graham looks to (1) the language stating that the Chambers family has "no way of knowing why [Chambers] was killed . . . because the only living persons who participated in the events leading up to his untimely and tragic death are the two Defendants,"[9] and (2) the language "alleg[ing] that Mr. Graham was negligent and grossly negligent in causing the death of Mr. Chambers." Urging our liberal interpretation of the pleadings, Graham argues that because the petition set forth causes of action for negligence and gross negligence, in addition to the cause of action for an intentional tort, it "present[ed] a matter

---

[9]Underwriters responds that the "no way of knowing" language is an irrelevant statement about Graham's possible motive for shooting Chambers—not a statement suggesting that Graham pulled the trigger negligently instead of intentionally.

10

that could potentially be covered by the insurance policy," requiring Underwriters to defend him in the Chambers lawsuit. *See Ewing*, 420 S.W.3d at 33. Because it is uncontested that Underwriters failed to defend him, Graham argues that the trial court's summary judgment on his claims arising from the failure to provide a defense was proper.

"An accident is generally understood to be a fortuitous, unexpected, and unintended event." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). Underwriters argues that the factual allegations in the petition (1) stating that a gun was used "to carry out [Graham's] intent and purpose of bringing about the death of [Chambers]" and, (2) describing the incident as a "vicious assault" and "violent assault and battery," alleged only intentional conduct. Thus, Underwriters claims that it has no duty to defend because (1) the underlying petition alleges one injury-causing act, pointing the gun at Chambers and pulling the trigger, (2) there are no facts in the petition alleging that the shooting was anything other than intentional, and (3) the shooting was not a covered occurrence (a) since it was not an accident and (b) because the policy excluded coverage for intentional acts. Underwriters argues that the trial court thus erred in granting Graham's cross-motion for summary judgment, but should have granted Underwriters' traditional motion for summary judgment.

"Our precedent favors insureds when examining both the complaint and the policy. As to the complaint, if it includes even one covered claim, the insurer must defend the entire suit . . . . However, we only defer to a complaint's characterization of factual allegations, not legal theories or conclusions." *Evanston Ins. Co.*, 370 S.W.3d at 380. Thus, in reviewing the Chambers family's pleadings in light of the policy provisions, we must focus on the facts alleged

11

instead of the legal theories. *See Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141 ("It is not the cause of action alleged that determines coverage, but the facts giving rise to the alleged actionable conduct.").

This principle is well illustrated by *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81 (Tex. 1997). There, the Texas Supreme Court held that Farmers had no duty to indemnify its insured, James Royal, III, in a lawsuit brought by Robert Griffin. *Id.* at 81–82. Griffin's petition alleged, "Suddenly and without warning, a vehicle driven by [Royal] approached Mr. Griffin. Several rounds of gunfire were discharged from the vehicle in the direction of the Plaintiff . . . . This drive-by shooting was a random act of violence which has permanently injured and scarred the plaintiff." *Id.* at 82. The petition further alleged that Royal was negligent in transporting armed persons and was negligent in failing to operate a motor vehicle in a safe manner, control his passengers, stop and render aid, or take evasive action to avoid injury to Griffin. *Id.* at 82 n.1. The Farmers automobile insurance policy excluded coverage for any person "[w]ho intentionally causes bodily injury." *Id.* at 82. The court wrote, "although Griffin seeks relief on legal theories of negligence and gross negligence, he alleged facts indicating that the origin of his damages was intentional behavior. He made no factual contention that could constitute negligent behavior by Royal." *Id.* at 83. Because the shooting was the result of intentional conduct, the court found that Griffin's complaint was within the policy's exclusion of intentional acts. *Id.*

*Griffin* established that a mere allegation of negligence does not control the duty to defend. *Id.*; *see Branham v. State Farm Lloyds*, No. 04-12-00190-CV, 2012 WL 3985925, at

12

*3–4 (Tex. App.—San Antonio Sept. 12, 2012, pet. denied) (mem. op.) (citing *Freedman v. Cigna Ins. Co. of Tex.*, 976 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, no pet.)); *Huffines v. State Farm Lloyds*, 167 S.W.3d 493, 501 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same). Thus, the underlying petition's causes of action for negligence and gross negligence, on their own, were insufficient to require Underwriters to defend Graham in the Chambers lawsuit.

Yet, Graham claims that the petition's recitation that the Chambers family had "no way of knowing why" Graham pulled the trigger is a factual allegation supporting the possibility of negligent conduct. We disagree. While they may not have been aware of Graham's motive for shooting Chambers, the Chambers family knew how the shooting occurred. The petition stated that Graham (1) asked Osborn to fetch a loaded weapon, (2) instructed Osborn to shoot Chambers, (3) took the weapon from Osborn when he refused, and (4) shot Chambers at close range. Just as *Griffin* found that the underlying petition alleged only intentional conduct even though it described the incident as a "random act of violence" and included a cause of action for negligence, we conclude that the factual allegations contained in the Chambers family's petition establish that the origin of the damage was Graham's intentional act of firing the weapon.[10]

Although we find that the act causing the damage was intentional, we recognize that an intentional act can still be considered an accident because "whether an event is accidental is determined by its effect." *Cowan*, 945 S.W.2d at 827 (quoting *Republic Nat'l Life Ins. Co. v.*

---

[10]Nothing suggests that Graham's act in shooting Chambers was anything other than intentional because (1) there is no suggestion that Graham slipped, fell, or otherwise mistakenly pulled the trigger, and (2) other language used in the petition described the shooting as intentional. *See Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834, 838 (Tex. App.—Dallas 1997, no writ).

13

*Heyward*, 536 S.W.2d 549, 555 (Tex. 1976)). *Cowan* rejected the argument that an incident can never be an accident if an actor intended to engage in the conduct that gave rise to an injury. *Id.* at 828. The court explained,

> Trinity's approach would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance. For example, consider the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person. Though firing the gun was intentional, the harm can reasonably be characterized as an "accident." Yet Trinity's proposed construction would provide no coverage. We think such a construction would also conflict with our holding that an "accident" includes the "negligent acts of the insured causing damage which is undesigned and unexpected."

*Id.*[11] In other words, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Lamar Homes, Inc.*, 242 S.W.3d at 8.[12] This is not the situation before us.

> [A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.

*Id.* at 9. "The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. This standard is objective. A person is held to intend the

---

[11]Although the act of firing a gun was "deliberate" and "intentional," a close reading of the hunter analogy in *Cowan* demonstrates that the court characterized the act of firing in the direction of what the hunter thought was a deer a "negligent act" due to the mistake *and* found that the result was unintended. *Cowan*, 945 S.W.2d at 828.

[12]*Lamar Homes, Inc.*, clarified that foreseeability alone is not the boundary between accidental and intentional conduct. *Lamar Homes, Inc.*, 242 S.W.3d at 4, 8. Graham cites to *Lamar Homes, Inc.*, and argues that his conduct could be an accident even if the result is foreseen. *Lamar Homes, Inc.*, found that allegations of unintended construction defects arising from faulty workmanship constituted an accident despite the fact that the resulting damage was foreseeable. *Id.* at 4. In *Lamar Homes, Inc.*, the act was unintentional, although the injury was foreseeable. Here, the act of firing the weapon was intentional, and, as explained below, the result was foreseeable.

14

natural and probable results of his acts even if he did not subjectively intend or anticipate those consequences." *Wessinger*, 949 S.W.2d at 837.

Here, the four corners of the petition demonstrate that Graham's use of a "loaded 410 shotgun . . . to carry out his intent and purpose of bringing about" Chambers' death was intentional. Because Chambers' death was the type of injury that ordinarily follows from pointing a shotgun at a person's head and shooting him or her "at very close range," we conclude that the injury was a natural and probable result of Graham's act. "Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident." *Id.*; *see Cowan*, 945 S.W.2d at 827.

Under the terms of the policy, coverage applied only to accidents causing bodily injury and was expressly excluded for acts "caused intentionally by . . . an insured." Because the incident was not an accident, Underwriters had no duty to defend. Therefore, the trial court erred in granting Graham's cross-motion for summary judgment and in denying Underwriters' summary judgment.

We sustain Underwriters' point of error. We reverse the trial court's judgment and render a take-nothing judgment in favor of Underwriters.

Josh R. Morriss, III
Chief Justice

Date Submitted:      September 24, 2014
Date Decided:        December 5, 2014

15