

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00021-CV
_____


BUSH CONSTRUCTION, INC., Appellant

V.

TEXAS MUTUAL INSURANCE COMPANY, Appellee


On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2016-160-B


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

After Robert Hall suffered serious on-the-job injuries while operating a hy-rail-enabled brushcutter to clear vegetation along railroad lines operated by Union Pacific Railroad Company (Union Pacific), he sued his employer, Bush Construction, Inc. (Bush), and Union Pacific for the damages he incurred (the Hall suit). Texas Mutual Insurance Company (Texas Mutual) initially tendered a defense to the Hall suit on behalf of Bush under a reservation of rights. However, after about a year, Texas Mutual determined that there was no coverage for Hall's claims under its policy and withdrew its defense. Consequently, Bush assumed the burden of its own defense of the Hall suit, which was eventually settled. Bush then filed this lawsuit against its insurance agent, Texas Mutual, and two other defendants, seeking to recoup the sums it incurred in defending the Hall suit and other damages. In its first amended petition, Bush asserted claims against Texas Mutual for breach of contract, violations of the Texas Prompt Payment Act,[1] unfair and deceptive acts or practices in the business of insurance,[2] breach of the implied duty of good faith and fair dealing, and tortious interference.

After the trial court granted Texas Mutual's motion for summary judgment as to all claims asserted against it, the trial court severed those claims and entered final judgment in favor of Texas Mutual. In this appeal, Bush challenges the trial court's grant of summary judgment in favor of Texas Mutual. Because we find that summary judgment was proper, we affirm the trial court's judgment.

---

[1]*See* TEX. INS. CODE ANN. §§ 542.058, 542.060 (West Supp. 2017).

[2]*See* TEX. INS. CODE ANN. § 541.060 (West 2009).

## I.     Background

At the time of Hall's injury, Bush was insured by Texas Mutual under its Workers' Compensation and Employers Liability Insurance Policy (the Policy). Part One of the Policy provided for the payment of benefits required by workers' compensation law. It is undisputed that prior to the Hall suit, Texas Mutual paid over $180,000.00 in workers' compensation benefits as a result of the injuries Hall sustained from the on-the-job incident that is the subject of the Hall suit. Part Two of the Policy provided, in certain circumstances, for payment of damages, where permitted by law, because of bodily injury to Bush's employee that arose out of and in the course of employment. Among the exclusions from coverage under Part Two were any obligation imposed by workers' compensation and "[b]odily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60),[3] any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment" (the FELA exclusion). Although Part Two provided that Texas Mutual had the duty to defend any claim against Bush payable under the Policy, it also provided that Texas Mutual had "no duty to defend a claim, proceeding or suit that [was] not covered by [the Policy]." In the trial

---

[3]In relevant part, the Federal Employers' Liability Act (FELA) provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C.A. § 51 (West, Westlaw current through P.L. 115-223. Also includes P.L. 115-225. Title 26 current through 115-230).

court, Texas Mutual acknowledged that in the absence of an applicable exclusion to coverage, the Policy would have required it to defend the claims asserted in the Hall suit.

In the second amended complaint filed in the Hall suit,[4] Hall alleged (1) that his causes of action against Union Pacific and Bush arose under the FELA, (2) that both Union Pacific and Bush were common carriers by railroad, (3) that at the time of the incident, Hall was working in the course and scope of his employment for Union Pacific and Bush, and (4) that his employment was in furtherance of, and directly and closely related to, interstate commerce. Hall alleged that his injuries were caused when the keeper and blade cutter of the hy-rail-enabled brushcutter he was operating became detached, smashed through the cab enclosure, and shattered many of the bones in his leg below his knee. He also alleged that the equipment he was operating was negligently designed and maintained by Bush. Hall then asserted a cause of action against Bush, "[a]s a common carrier," and alleged that Bush was negligent by, *inter alia*:

> b. Failing to protect its employees from unsafe and potentially hazardous conditions;
>
> c. Failing to warn [Hall] of the dangers associated with using the mobile brushcutter equipment;
>
> d. Failing to prohibit the use of unreasonably dangerous mobile equipment; and
>
> e. Failing to discontinue the use of the brushcutter after it was known the mobile equipment was prone to failure.

Texas Mutual initially tendered a defense on behalf of Bush under a reservation of rights. In its reservation of rights letter, Texas Mutual pointed out several clauses in the Policy that might

---

[4]The second amended petition was the live pleading in the Hall suit at the time Texas Mutual withdrew its defense.

preclude coverage, including the FELA exclusion. It also reserved its right to withdraw from its defense of Bush. About one year later, Texas Mutual notified Bush that it had determined that based on Hall's pleadings, the FELA exclusion applied to preclude coverage under Part Two of the Policy and that Bush should retain its own attorney. Two months later, Texas Mutual notified Bush that it was exercising its right to withdraw from defending Bush in the Hall suit.

## II.     Standard of Review and Governing Law

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to

5

summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether the plaintiff produced any evidence of probative force to raise a fact issue on the material questions presented. *See id.*; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). The plaintiff will defeat a defendant's no-evidence summary judgment motion if the plaintiff presents more than a scintilla of probative evidence on each element of its claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.).

In determining whether an insurer has the duty to defend a claim against its insured, we apply the eight-corners rule. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* (quoting *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141).

In examining the petition, "we construe the allegations in the pleadings liberally." *Tex. Farm Bureau Underwriters v. Graham*, 450 S.W.3d 919, 923 (Tex. App.—Texarkana 2014, pet. denied) (quoting *GEICO Gen. Ins. Co. v. Austin Power, Inc.*, 357 S.W.3d 821, 824 (Tex. App.—

6

Houston [14th Dist.] 2012, pet. denied) (citing *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141). We consider the factual allegations without regard to their truth or falsity, and we resolve all doubts regarding the duty to defend in favor of the insured. *Id.* (citing *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014)). Further, in making our determination, we "look to the factual allegations showing the origin of the damages claimed, not the legal theories or conclusions alleged." *Id.* (quoting *Ewing Const. Co.*, 420 S.W.3d at 33). If the petition asserts one claim that could potentially be covered by the insurance policy, the insurer must defend the entire suit. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012); *Graham*, 450 S.W.3d at 923.

In construing an insurance contract, we employ the same rules used in interpreting other contracts. *Graham*, 450 S.W.3d at 923 (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). "When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Id.* (quoting *Forbau*, 876 S.W.2d at 133).

In determining an insurer's duty to defend,

> [t]he insured has the initial burden to establish coverage under the policy. If it does so, then to avoid liability the insurer must prove one of the policy's exclusions applies. If the insurer proves that an exclusion applies, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage.

*Id.* (quoting *Ewing Const. Co.*, 420 S.W.3d at 33).

## III. Analysis

### A. Texas Mutual Had No Duty to Defend the Hall Suit

In its brief, Bush acknowledges that Hall asserted a cause of action under the FELA and that such cause of action would be excluded under the Policy. Nevertheless, it argues that Hall

7

also alleged a cause of action for products liability,[5] separate and apart from his FELA claim. Since the cause of action for products liability was asserted against it in a capacity other than as an employer, Bush contends, this shows that this claim is covered under the Policy.[6] In addition, Bush argues that the allegations regarding Hall's FELA claim have no bearing on the products liability claim. We disagree.

As previously noted, in determining whether an insurer has a duty to defend, we do not consider the legal theories of recovery asserted. Rather, we look to the factual allegations showing the *origin* of the damages claimed to determine whether the claim is covered by the insurance policy.[7] *Ewing Const. Co.*, 420 S.W.3d at 33; *Graham*, 450 S.W.3d at 923. In his second amended petition, Hall alleged that at the time of the incident causing his injuries, (1) Bush was a common

---

[5]This argument is based on a single statement in Hall's second amended petition that Bush negligently designed the brushcutter.

[6]Part Two of the Policy includes coverage for bodily injury to an employee arising out of and in the course of employment that is claimed against the insured in a capacity other than as employer.

[7]As we noted in *Graham*,

> This principle is well illustrated by *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81 (Tex. 1997). There, the Texas Supreme Court held that Farmers had no duty to indemnify its insured, James Royal, III, in a lawsuit brought by Robert Griffin. *Id.* at 81–82. Griffin's petition alleged, "Suddenly and without warning, a vehicle driven by [Royal] approached Mr. Griffin. Several rounds of gunfire were discharged from the vehicle in the direction of the Plaintiff. . . . This drive-by shooting was a random act of violence which has permanently injured and scarred the plaintiff." *Id.* at 82. The petition further alleged that Royal was negligent in transporting armed persons and was negligent in failing to operate a motor vehicle in a safe manner, control his passengers, stop and render aid, or take evasive action to avoid injury to Griffin. *Id.* at 82 n.1. The Farmers automobile insurance policy excluded coverage for any person "[w]ho intentionally causes bodily injury. *Id.* at 82. The court wrote, "although Griffin seeks relief on legal theories of negligence and gross negligence, he alleged facts indicating that the origin of his damages was intentional behavior. He made no factual contention that could constitute negligent behavior by Royal." *Id.* at 83. Because the shooting was the result of intentional conduct, the court found that Griffin's complaint was within the policy's exclusion of intentional acts. *Id.*

*Graham*, 450 S.W.3d at 926–27.

8

carrier by railroad, (2) Hall was working in the course and scope of his employment for Bush, in the furtherance of, and directly and closely related to, interstate commerce,[8] and (3) due to Bush's negligence, the keeper and blade cutter of the brushcutter Hall was operating became detached and struck and shattered the bones in his legs. As previously noted, the FELA applies to a common carrier by railroad whose employee is injured while engaging in interstate commerce due to the negligence of the employer. *See* 45 U.S.C.A. § 51. Thus, the origins of Hall's injuries occurred while he was performing work subject to the FELA. One of the exclusions to coverage under the Policy was for "[b]odily injury to any person in work subject to the [FELA]." There is no exception to this exclusion for claims asserted against Bush in a capacity other than as an employer. While Hall also alleged that Bush negligently designed the brushcutter, this does not allege a separate origin of his injury, but rather a separate legal theory of recovery. Under either legal theory of recovery, negligence or products liability, the origin of Hall's injuries occurred in work subject to the FELA, which was excluded under the plain terms of the Policy. Consequently, Texas Mutual did not have a duty to defend the Hall suit. Therefore, we find that the trial court did not err in granting summary judgment on Bush's breach of contract claims.

## B.    Bush's Extra-Contractual Claims Are Barred

In its brief, Bush acknowledges that its claims under the Prompt Payment Act and for breach of the common law duty of good faith and fair dealing would be barred if Texas Mutual

---

[8]In its brief, Bush asks us to ignore Hall's allegations that Bush was a common carrier by railroad and that Hall was performing work in furtherance of, and related to, interstate commerce. It argues that we should do so because these are conclusory allegations with no evidentiary value and they are false. However, in our determination of the duty to defend, we review the plaintiff's allegations without regard to their truth or falsity and without regard to whether the plaintiff will ultimately be able to support its allegations with sufficient evidence. *Id.* at 923.

9

did not have a duty to defend the Hall suit. We agree. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (when issue of coverage is resolved in the insurer's favor, extra-contractual claims asserting violation of Prompt Payment Act and breach of duty of good faith and fair dealing do not survive); *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam) (claims under the Prompt Payment Act and common-law bad-faith claims precluded by determination that there is no coverage under the insurance policy). Therefore, we find that the trial court did not err in granting summary judgment on these claims.

Bush argues, however, that its claim for unfair or deceptive trade practices under Section 541.060 of the Texas Insurance Code is not coverage dependent. Bush cites no authority for its argument. To the contrary, the Texas Supreme Court has held that under the predecessor statute to Section 541.060, there can be no liability under the statute if there is no coverage under the policy. *Page*, 315 S.W.3d at 532; *Boyd*, 177 S.W.3d at 922. It has recently reaffirmed this rule for claims asserted under Section 541.060. *Menchaca*, 545 S.W.3d at 491, 493–95. Consequently, we find that the trial court did not err in granting summary judgment on this claim.

## C.     No Evidence of Tortious Interference

In its first amended petition, Bush alleged that Texas Mutual had willfully and intentionally interfered with its attorney-client relationship with the counsel Texas Mutual hired to defend Bush in the Hall suit. Bush alleged that Texas Mutual "interfered with that relationship by continuing

10

to direct the litigation such that counsel for Texas Mutual communicated with Texas Mutual and failed to communicate regarding important elements of the litigation with Bush." A claim for tortious interference with contract requires the plaintiff to show "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Whisenhunt v. Lippincott*, 474 S.W.3d 30, 44 (Tex. App.—Texarkana 2015, no pet.).

Texas Mutual asserted in its summary judgment motion that Bush could not establish the elements of its tortious interference claim and specifically that there was no evidence that Texas Mutual interfered with any contract between Bush and its counsel. When faced with a no-evidence motion for summary judgment, it is incumbent upon the nonmovant to produce more than a scintilla of evidence that raises a genuine issue of material fact on the challenged elements. *See Rodriguez*, 92 S.W.3d at 506; *Woodruff*, 51 S.W.3d at 734–35. In its response to the motion for summary judgment, although Bush recognized that it faced a no-evidence motion for summary judgment, it produced no probative evidence that Texas Mutual had directed the litigation or otherwise interfered in the attorney-client relationship between Bush and its counsel. On appeal, Bush does not direct us to any probative evidence, and we have found none, in support of its allegation that Texas Mutual interfered in its attorney-client relationship. Since we have found no probative evidence that Texas Mutual interfered in Bush's attorney-client relationship, we find that the trial court did not err in granting summary judgment on this claim.

11

For the reasons stated, we affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     August 6, 2018
Date Decided:       August 15, 2018